Brian J. Stibitz, AK Bar # 0106043
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
brian@reevesamodio.com
*Attorney for Petitioner*

Robert A. Bouvatte, Jr., FL Bar # 71525
ROBERT A. BOUVATTE, PPLC
1806 6th Court SER
Tumwater, WA 98501
(904) 505-3175
rbouvattelaw@gmail.com
bob@rbouvattepllc.com
*Pro hac vice Attorney for Petitioner*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| EGAE, LLC, an Alaska limited liability company,<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>MARCIA FUDGE, in her Official Capacity, as Secretary of the<br>UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT,<br>MIDCAP FINANCIAL TRUST,<br>a Delaware statutory trust, and<br>MIDCAP FUNDING INVESTMENT X, LLC,<br>a Delaware limited liability company,<br><br>Respondents/Defendants. | No. 3:23-CV- 00003-HRH<br><br>**PETITIONER'S COMPLAINT FOR DECLARATORY RELIEF, AND PETITION FOR JUDICIAL REVIEW PURSUANT TO ADMININSTRATIVE PROCEDURES ACT** |

The Plaintiff/Petitioner, EGAE, LLC ("EGAE" or the "Petitioner"), by and through its undersigned counsel, and for its Complaint for Declaratory Relief, and Petition for Judicial Review against MARCIA FUDGE, in her Official Capacity as Secretary of the UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT ("HUD" or the "Department"), MIDCAP FINANCIAL TRUST, a Delaware statutory trust ("MidCap Trust"), and MIDCAP FUNDING INVESTMENT X, LLC ("MidCap Funding") (collectively, the "Respondents"), and hereby alleges that:

## I.      INTRODUCTION.

1.      This is a petition for judicial review, seeking review of HUD's final agency action, pursuant to the Administrative Procedures Act, 5 U.S.C. Section 701, *et seq.* (the "APA"), as well as an action for declaratory relief, pursuant to 5 U.S.C. Section 702, and 28 U.S.C. Sections 2201 and 2202. An immediate, actual controversy exists which requires resolution by this Court.

## II.      PARTIES.

2.      Petitioner, EGAE, LLC, is an Alaska limited liability company, and the owner of real property located at Lot B of McKay Subdivision, according to the Official Plat thereof, filed under Plat No. 2003-111, in the Records of the Anchorage Recording District, Third Judicial District, State of Alaska (the "Property").

3.      The Respondent, United States Department of Housing & Urban Development, is a United States government agency, headquartered in Washington, D.C., and having a field office in Anchorage, Alaska.

4.     The Respondent, MidCap Financial Trust, is a statutory trust entity formed in the State of Delaware, that purchased the mortgage loan that is the subject of the instant action and petition. MidCap Trust is named herein such that the Court may provide complete relief upon EGAE's petition to hold unlawful and set aside the sale of the mortgage loan.

5.     The Respondent, MidCap Funding Investment X, LLC, is a Delaware limited liability company, to which MidCap Trust assigned the mortgage loan on or about December 21, 2022, after MidCap Trust purchased the mortgage loan that is the subject of the instant action and petition. MidCap Funding is named herein such that the Court may provide complete relief upon EGAE's petition to hold unlawful and set aside the sale of the mortgage loan.

### III.     JURISDICTION AND VENUE.

6.     The Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3), because: (i) this case seeks judicial review of federal agency action, pursuant to the APA, 5 U.S.C. §§ 702 and 706, and (ii) this case raises violations of Plaintiff's federal constitutional rights under the Fifth Amendment and is brought pursuant to 28 U.S.C. §§ 2201 (for declaratory relief). This matter raises numerous federal questions.

7.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b).

### IV.     STATEMENT OF FACTS.

_History of the Property_

8.     The Petitioner's relationship with HUD originated in the early 2000's. At that time, Petitioner began the process of applying for a HUD-backed mortgage loan for the Property in or

around 2004, during which process it was advised that it would need a "no-action" letter from Alaska's State Historic Preservation Office ("SHPO"), to ensure that the development of the Project would not affect the preservation of historic property.

9.      Unfortunately, however, the SHPO informed Petitioner's representative, Mr. Marc Marlow, that historic preservation criteria would require Petitioners to change the redevelopment plan in order to preserve the original look of the project – but that by complying, the Project would earn Historic Tax Credit ("HTC") incentives, pursuant to 16 U.S.C. §§ 470, 470-1, and 470h-2, *inter alia*, which incentives would allow the Petitioners to offset these extensive rehabilitation costs.

10.     In reliance upon these statements, the Petitioner then altered the design and generated budgets for the Project, in consultation with historic architectural and HTC consultants, and expected to be able to recoup the full amount of its investment in the HTC.

11.     HUD agreed to insure the development loan for the project, pursuant to Section 221d4 of the National Housing Act, 12 U.S.C. § 1701, *et seq*. On March 8, 2005, the Petitioner executed a Regulatory Agreement with HUD. A true and correct copy of the Regulatory Agreement, dated March 8, 2005, is attached hereto as **Exhibit 1**.

12.     The Regulatory Agreement reflected the agency's agreement to insure the loan that was, at that time, owned by CW Capital, LLC, pursuant to the documents encumbering the Property (the "Mortgage Loan"). *See* Deed of Trust, dated March 8, 2005, a true and correct copy

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR                    PAGE **4** OF **27**
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

Case 3:23-cv-00003-KFR     Document 6     Filed 01/10/23     Page 4 of 27

of which is attached hereto as **Exhibit 2**, and Deed of Trust Note, dated March 8, 2005 a true and correct copy of which is attached hereto as **Exhibit 3**.

13.     Thereafter, Petitioner set to work rehabilitating the property, as required by the National Park Service, and as necessary to accrue HTC in the project.[1] Ultimately, Petitioner expended over Twelve Million Dollars ($12,000,000.00) rehabilitating the Property, in reasonable reliance on the investment-backed expectations created by NPS' HTC program and other federal statutes, resulting in tax credits worth $2,451,779.[2]

14.     In March, 2006, Petitioner's representative, Mr. Marc Marlow, approached HUD's legal counsel in Anchorage with a draft proposal for a master lease, to affiliate Bank of America ("BoA") as an investor with the Project, for the purposes of BoA's purchasing the HTC at the then-prevailing market rate.

15.     Sean Gallagher, a HUD Production Chief, later testified that although HUD had been contemporaneously undergoing a review to develop policies to deal with this specific issue, HUD's Multifamily Director in Washington, D.C., Joe Lloyd, instructed Mr. Gallagher that the Petitioner's master lease proposal could not be accepted by HUD or utilized to sell the HTC to BoA. Mr. Lloyd stated to Mr. Gallagher that until HUD had completed developing a policy, to

---

[1] General background information concerning the historic preservation requirements of the National Park Service ("NPS") is available at https://www.nps.gov/subjects/historicpreservation/index.htm (last visited January 8, 2023).

[2] General background information concerning the tax incentives offered for rehabilitation of historic buildings to the standards of NPS is available at https://www.nps.gov/tps/tax-incentives.htm (last visited January 8, 2023).

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW                                                    PAGE **5** OF **27**
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

which any subsequent proposals could be conformed, all proposals for two-tier master lease proposals were to be rejected outright. Neither Mr. Gallagher nor the Petitioner had any recourse with respect to that decision, the reasoning for which amounted to "because the policy hadn't been issued so it couldn't comply, it wouldn't be allowed."

16. Although HUD had apparently begun this process as of April, 2006, and although the HTC program had been a part of federal law for decades already, HUD apparently did not complete its review until late 2009, when it issued Mortgagee Letter 2009-40. A true and correct copy of Mortgagee Letter 2009-40, dated October 19, 2009, is attached hereto as **Exhibit 4**.

17. The Petitioner did not have the option in 2006 to challenge HUD's denial, because while the HTC could not, as a practical matter, be sold before construction was complete and a cost certification audit performed, the HTC were *required* to be sold before tenants moved into such a project, in order to be eligible for sale.

18. As a result of HUD's denial, Petitioner was forced to convey to BoA an ownership interest in the Project, under a one-tier structure, in order to move forward. This resulted in the HTC being diminished in value in connection with the sale to BoA, to roughly eighty percent (80%) of their former value – it is undisputed that the Petitioner was deprived of over Four Hundred Thousand Dollars ($400,000.00) as a result.

19. Notwithstanding HUD's treatment of the Project, Petitioner is aware of only one (1) other instance in which HUD attempted to force a multi-family residential developer to close an HTC transaction under a one-tier structure, and in that instance, HUD ultimately relented. The

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR                    PAGE **6** OF **27**
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

Case 3:23-cv-00003-KFR    Document 6    Filed 01/10/23    Page 6 of 27

developer in question there was named Marcel Wisznia, who operated an apartment building in New Orleans, Louisiana. Mr. Wisznia was required to engage in discussions with HUD for well over a year before they permitted him to use the two-tiered structure that the Petitioners had sought to utilize.

20.     As HUD ultimately acknowledged, however, "[m]aster leases are used to maximize the benefits" of HTC, among other sources of tax credit equity, and "are advantageous to investors and developers participating in these programs by providing maximum leverage for project financing and premium pricing for equity, while reducing the need for additional debt." *See* **Ex. 4**, at PER 087.

21.     Notwithstanding HUD's devaluation of Petitioner's HTC, the impacts upon the Project did not even begin to be precipitated for several years, when a local property tax exemption that the Petitioner had negotiated for the Project expired.

22.     Because HUD initially failed to include a property tax reserve as one of the underwriting requirements for the loan, the Petitioner was required by the lender who had purchased the note, Walker Dunlop, LLC, to use the 2017 mortgage payments as payments towards the 2017 tax bill from the Municipality of Anchorage.

23.     As a result, and because the devaluation of Petitioner's HTC had cost it over $400,000.00 in liquid capital, the use of the mortgage payments toward payment of the tax bill resulted in Petitioner defaulting on the mortgage as of August 1, 2018.

24.     Following the default, and pursuant to the lender's request, the loan was assigned to HUD in 2019. *See* letter re: Notification of Assignment of Loan, dated May 29, 2019, a true and correct copy of which is attached hereto as **Exhibit 5**.

25.     At the time that the Mortgage Loan was assigned from Dunlop Walker to HUD, the Mortgage loan had an unpaid principal balance of $6,899,923.14. *See* **Ex. 5**.

26.     Prior to the time of the Assignment, from 2016-2019, Petitioner's representative frequently proposed various resolutions, including a re-finance of the Mortgage Loan, or other pre-payment of same. Due to Petitioner's purported default in the Regulatory Agreement, however, HUD, has refused to allow Petitioner to satisfy the Mortgage Loan and clear its ownership of the Property.

27.     Since the time of the Assignment, and during related proceedings, HUD has suggested that it intended to foreclose the outstanding Mortgage Loan.

*HUD's Improper Sale and Subsequent Closing of the Mortgage Loan to MidCap*

28.     At this time, however, HUD has purported to sell the Mortgage Loan to a third-party purchaser, MidCap, instead of pursuing foreclosure proceedings itself.

29.     Specifically, on August 29, 2022, HUD issued correspondence to EGAE, as the owner of the Property, indicating that the Mortgage Loan would be sold, along with several others, in an "upcoming loan sale," *i.e.*, an auction of multifamily mortgage loans, but did not specify the date upon which the sale or closing was to take place (the "Loan Sale Letter"). A true and correct copy of the Loan Sale Letter is attached as **Exhibit 6**.

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR                    PAGE **8** OF 27
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-cv-_____

Case 3:23-cv-00003-KFR     Document 6     Filed 01/10/23     Page 8 of 27

30.     The Loan Sale Letter also stated that "[t]he details of the sale will be published in the Sale Announcement after a loan sale date is determined. You will be able to view the Sale Announcement on the HUD website at Asset Loan Sales Information." *See* **Ex. 6**. Although a Sale Announcement was published in the Federal Register, it does not appear that any information on the loan sale was subsequently published on HUD's website. *See* https://www.hud.gov/program_offices/housing/comp/asset/hsgloan (last visited January 8, 2023).

31.     Although dated August 29, 2022, no individual or entity acting on behalf of EGAE had notice of the matters set forth in the Loan Sale Letter, until such time as Mr. Marlow opened the envelope and read the Loan Sale Letter on September 22, 2022.

32.     As set forth in the Loan Sale Letter, EGAE, as well as any of its affiliates, were expressly prohibited from participating in the bidding process, and sale of the loan extinguished Petitioner's interest in the Regulatory Agreement. *See* **Ex. 6** ("Neither you, nor any of your principals, affiliates, and assigns can purchase the loan or qualify to bid in the loan sale…Unless your loan is subordinate to another FHA-insured mortgage loan, the Regulatory Agreement between you and HUD will no longer apply after the loan sale is closed, and you will no longer be obligated to meet its requirements.").

33.     The Loan Sale Letter (**Ex. 6**) requested no comment on the part of EGAE, and further, provided no opportunity to participate in the process of formulating the Loan sale; it only requested that EGAE provide certain documents that HUD claimed were necessary to conduct its

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.: 3:23-CV-_____

PAGE **9** OF **27**

Case 3:23-cv-00003-KFR     Document 6     Filed 01/10/23     Page 9 of 27

due diligence with respect to the Property, and indicated that the mortgagor may need to provide access to the Property in order to conduct an appraisal.

34.     Subsequently, on October 12, 2022, HUD published notice of its intended loan sale in the Federal Register, Vol. 87, No. 196, a true and correct copy of which is attached hereto as **Exhibit 7**. This notice contains a great deal of additional information that had not been set forth in the Loan Sale Letter, including the date of the sale, which was announced to be November 16, 2022 (**Ex. 7**).

35.     As indicated in the Federal Register notice, the loan sale at issue was denominated MHLS 2023-1, and described the noticed action as a sale of "sixteen (16) unsubsidized mortgage loans…consisting of…one (1) first lien multifamily note secured by a multifamily property located in Alaska." *See* **Ex. 7**, at p. 61624.

36.     Were it not for HUD's explicit exclusion of EGAE and any of its affiliates from the bidding process, and for its lack of notice of the matters published on the Federal Register, EGAE would have proceeded to timely submit a bid to participate in the sale of the Mortgage Loan, as the Federal Register notice indicates was required. *See id*.

37.     Pursuant to that exclusion, however, the requisite terms of "Bidder Eligibility" for participation in the loan sale contained various criteria which explicitly prohibited any such individuals or entities from bidding. *See id*. Moreover, Petitioner did not receive timely notice of the matters contained in the Federal Register notice.

38.     As set forth in the Federal Register notice, subsequent to the "competitive, sealed bid process" scheduled for November 16, "HUD anticipates that an award or awards will be made on or before November 21, 2022." *See id*. Moreover, "[c]losing is expected to take place **on a specified date** between November 29 and December 7, 2022." *See id.* (emphasis added). To Petitioner's knowledge, however, no subsequent notice was given before the sale and transfer of the Mortgage Loan were closed.

39.     Instead, on December 6, 2022, Respondent MidCap Trust sent to Petitioner, via electronic mail and overnight mail, a notice indicating that "[t]his is to inform you that effective December 6, 2022, the referenced mortgage loan has been sold, transferred and assigned" by HUD to MidCap Trust, and that all future payments should be made to MidCap Trust, though its servicer, MidCap Financial Services, LLC. *See* correspondence dated December 6, 2022, a true and correct copy of which is attached hereto as **Exhibit 8**.

40.     EGAE, through undersigned counsel, sent correspondence to HUD's counsel on December 13, 2022, requesting that HUD and MidCap Trust agree to set aside the sale of the Mortgage Loan, for the reasons set forth herein, and making HUD aware of certain of the defects in its announced sale of the Mortgage Loan. *See* correspondence dated December 13, 2022, true and correct copy of that attached hereto as **Exhibit 9**. At this time, however, HUD has provided no response to that correspondence, and Petitioner has been unable to reach an amicable resolution of the loan balance with MidCap Trust and/or MidCap Funding.

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR                    PAGE **11** OF 27
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

Case 3:23-cv-00003-KFR     Document 6     Filed 01/10/23     Page 11 of 27

41.     Petitioner has received from MidCap Trust's counsel a document believed to reflect the assignment of the Mortgage Loan from HUD to MidCap Trust, dated December 6, 2022, a true and correct copy of which is attached hereto as **Exhibit 10**.

42.     Petitioner has also been advised that as of December 21, 2022, the Mortgage Loan at issue was assigned from MidCap Trust to MidCap Funding and has received from MidCap Funding's counsel a document believed to be an Assignment of Deed of Trust dated December 21, 2022, a true and correct copy of which is attached hereto as **Exhibit 11**.

43.     HUD's sale of the Mortgage Loan to MidCap Trust as a third party purchaser, and the latter's apparent assignment to MidCap Funding thereafter, will ultimately result in an incalculable loss of *at least* $9 million to the Petitioner, when the Mortgage Loan is inevitably foreclosed by the holder of the Mortgage Loan – setting aside the injuries to EGAE's interests in real property and to its constitutional rights that have already occurred.

44.     The Petitioner has incurred attorney's fees and costs in connection with the filing and prosecution of this lawsuit, and hereby requests to be made whole for same, pursuant to 42 U.S.C. § 1988, and pursuant to any other applicable source of law.

### V.     CLAIMS FOR RELIEF.

### CLAIM 1
### Judicial Review for HUD's Violation of 5 U.S.C. § 553,
### Pursuant to 5 U.S.C. §§ 702 and 706

45.     The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

46.     HUD has violated the notice-and-comment procedures set forth in the APA, because it has not provided Petitioner with adequate notice of its announced loan sale and subsequent closing of the loan sale, nor permitted the Petitioner to comment or otherwise participate in the administrative rule-making process.

47.     HUD's sale of Petitioner's Mortgage Loan and its subsequent closing on the loan sale are each a "substantive rule," within the meaning of the APA. *See* 5 U.S.C. § 551(4).

48.     In pertinent part, the APA states that

(b)     General notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or have actual notice thereof in accordance with law. The notice shall include – (1) A statement of the time, place and nature of public rulemaking proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved…(c) After notice required by this section, the agency shall give interested persons with or without opportunity for oral presentation…

*See* 5 U.S.C. § 553 (emphasis added).

49.     Section 553 goes on to provide that "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except – (1) a substantive rule which grants or recognizes an exemption or relieves a restriction; (2) interpretive rules and statements of policy; or (3) as otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C. § 553(d) (emphasis added).

50.     HUD did not publish notice of the date or time of its intended loan sale in the Loan Sale Letter dated August 29, 2022. *See* **Ex. 6**. Moreover, although HUD subsequently published

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
Case No.:  3:23-cv-_____

Page **13** of 27

notice in the Federal Register, that notice did not specify the time or place that subsequent rulemaking in the form of closing on the loan sale would take place, even though its Federal Register notice indicated that "[c]losings are expected to take place on a specified date between November 29 and December 7, 2022. *See* **Ex. 7.**

51.     Nonetheless, HUD proceeded with an auction of the Mortgage Loan at issue here, on November 16, 2022, and apparently, an award of same "on or before November 21, 2022." *See* **Ex. 7**. Subsequently, HUD's final agency action was reflected in an award of a contract to the successful third-party bidder, in HUD's discretion, and closing of the loan sale in favor of MidCap Trust, on or about December 6, 2022. *See* **Exhibit 8**.

52.     There was no good cause for HUD's consummating the sale of the Mortgage Loan without adequate notice to a highly interested party, *i.e.*, Petitioner.

53.     Moreover, the notice published in the Federal Register (*see* **Ex. 7**) made clear that, as the former mortgagor, EGAE and any of its affiliated entities were to be excluded from the bidding and from the sale, generally. Petitioner would not have been able to bid in the sale on November 16 even if it had timely received actual notice of the sale.

54.     As such, HUD's Federal Register notice violated 5 U.S.C. § 553(d), for providing insufficient notice of the rulemaking embodied in MHLS 2023-1, and for failing to provide EGAE with the "…opportunity to participate in the rulemaking through submission of written data, views, or arguments." *See* 5 U.S.C. § 553(c).

55.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(A), (2)(D). Petitioner also seeks review under 5 U.S.C. § 702.

## CLAIM 2
### Judicial Review for HUD's Violation of 12 U.S.C. § 1701z-11 and 12 U.S.C. § 1715z-11a, Pursuant to 5 U.S.C. §§ 702 and 706

56.     The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

57.     In relevant part, the National Housing Act, 12 U.S.C. § 1701, *et seq.* (the "NHA") provides that "[t]he Secretary of [HUD] shall manage or dispose of multifamily housing projects that are owned by the Secretary <u>or that are subject to a mortgage held by the Secretary</u> in a manner that…(1) is consistent with the National Housing Act and this section; (2) <u>will protect the financial interests of the Federal Government;</u> and (3) will, in the <u>least costly fashion</u> among reasonable available alternatives, address [certain goals articulated by Congress as important to NHA policy]." *See* 12 U.S.C. § 1701z-11(a) (emphasis added).

58.     The NHA further states that "[d]uring fiscal year 1997 and fiscal years thereafter, the Secretary may manage and dispose of multi-family properties owned by the Secretary…and multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may determine, notwithstanding any other provision of law."). *See* 12 U.S.C. § 1715z-11a(a).

59.     Notwithstanding these broad discretionary statements, HUD's decisions under the NHA are reviewable in this Court, as the NHA provides standards by which to assess them. *See, e.g.*, 12 U.S.C. § 1701z-11(a).

60.     In this case, however, HUD's announced MHLS 2023-1 ran afoul of these standards, because the sale, and Petitioner's exclusion from the bidding process, mean that HUD disposed of the Mortgage Loan without duly considering the "financial interests of the Federal Government," and may have effectuated a choice that is not the "least costly" among its several alternatives. *See id.*

61.     Due to Petitioner's longstanding operation of the Property, and its massive investment of funds into same, Petitioner believes it had a more direct incentive in bidding the full amount of the outstanding loan, or as close thereto as need be, than any other third-party purchaser, who would seek to obtain the Mortgage Loan for the lowest price possible – including the purchaser MidCap Trust who obtained an interest in the Mortgage Loan.

62.     As such, if Petitioner is correct, HUD's exclusion of EGAE from the bidding process resulted in HUD receiving a lower amount in exchange for the Mortgage Loan, than it otherwise would have if EGAE was permitted to participate. Even if EGAE had not been the successful bidder, its involvement in the bidding process would undoubtedly have driven the bids of third-party participants higher, resulting in more financial recovery.

63.     By excluding EGAE and its affiliates from the bidding process, however, HUD has disregarded these considerations and virtually guaranteed that foreclosure of the Mortgage Loan

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
Case No.:  3:23-cv-_____

Page **16** of 27

will be necessary by the third-party purchaser, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee, resulting in a loss to the public that otherwise could have been avoided.

64.　　Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(A), (2)(D). Petitioner also seeks review under 5 U.S.C. § 702.

## CLAIM 3
### Judicial Review for HUD's Violation of 24 C.F.R. Part 290, Pursuant to 5 U.S.C. §§ 702 and 706

65.　　The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

66.　　Pursuant to the authority reflected in 12 U.S.C. § 1702, HUD has undertaken to promulgate additional regulations, which act to constrain its discretion in the disposition of non-performing mortgage loans.

67.　　As to "unsubsidized projects," the regulations provide that "[d]elinquent mortgages may be sold without FHA mortgage insurance. However, delinquent mortgages will not be sold if: (1) HUD believes that foreclosure is unavoidable; and (2) The project securing the mortgage is occupied by very low-income tenants who are not receiving housing assistance and would be likely to pay rent in excess of 30 percent of their adjusted monthly income if HUD sold the mortgage." *See* 24 C.F.R. § 290.35 (emphasis added).

68.     Specialized definitions of what constitute "subsidized projects" and "unsubsidized projects" are set forth at 12 U.S.C. § 1701z-11(b)(2)-(b)(4).

69.     HUD's Federal Register notice (*see* **Ex. 7**), makes clear that the Mortgage Loan at issue pertains to an "unsubsidized" project.

70.     As the Property encumbered by the Mortgage Loan is to be considered an "unsubsidized project," within the meaning of the NHA, HUD violated 24 C.F.R. § 290.35, for conveying a Mortgage Loan even though foreclosure of the Mortgage Loan is utterly "unavoidable," for reasons that HUD itself has brought about (causing Petitioner's default in the Regulatory Agreement, resulting in the assignment to HUD, and then arbitrarily excluding it from the bidding on its Mortgage Loan).

71.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(A), (2)(D). Petitioner also seeks review under 5 U.S.C. § 702.

**CLAIM 4**
**Violation of Fifth Amendment Right to Procedural Due Process,**
**Pursuant to 28 U.S.C. §§ 2201 and 5 U.S.C. §§ 702, 706**

72.     The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully set alleged herein.

73.     Petitioner enjoyed a legitimate claim of entitlement to its interest in the Mortgage Loan (*see* **Exs. 2 & 3**), as well as the Regulatory Agreement (*see* **Ex. 1**).

74.     Petitioner also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-party purchaser of the Mortgage Loan, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-1 is not set aside by this Court.

75.     HUD has sold the Mortgage Loan to a third-party purchaser, without EGAE's involvement in the bidding process, and without any substantive input from Petitioner, or other participation in the rulemaking process. For instance, HUD held no hearing to determine that EGAE and its affiliates should be excluded from the bidding process, and did not even provide adequate notice of its actions to satisfy the APA.

76.     The procedure contemplated by HUD, as set forth in its Federal Register notice (*see* **Ex. 7**), did not provide Petitioner with "due process of law," within the meaning of the Fifth Amendment to the United States Constitution, because it offered Petitioner no means of ensuring its rights were protected in connection with MHLS 2023-1.

77.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "contrary to constitutional right, power, privilege, or immunity." *See* 5 U.S.C. § 706(2)(A), (2)(B). Petitioner also seeks review under 5 U.S.C. § 702, and the Court may order declaratory relief pursuant to the APA, as well as pursuant to 28 U.S.C. §§ 2201, for HUD's constitutional violations.

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

PAGE **19** OF 27

**CLAIM 5**
**Violation of Fifth Amendment Right to Substantive Due Process,**
**Pursuant to 28 U.S.C. §§ 2201 and 5 U.S.C. §§ 702, 706**

78.     The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

79.     Petitioner enjoyed a legitimate claim of entitlement to its interest in the Mortgage Loan (*see* **Exs. 2 & 3**), as well as the Regulatory Agreement (*see* **Ex. 1**).

80.     Petitioner also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-party purchaser of the Mortgage Loan, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-1 is not set aside by this Court.

81.     Through its own arbitrary conduct in denying Petitioner the ability to fully realize the value of its HTC, in 2006, HUD has directly precipitated the Petitioner's default of the Mortgage Loan and of the Regulatory Agreement (**Ex. 1**), which resulted in an assignment of the Mortgage Loan to HUD. *See* **Ex. 5**.

82.     Now, in excluding Petitioner and any of its affiliates from the bidding process, without offering any explanation for this exclusion, HUD has arbitrarily determined that EGAE be deprived of its property interest in the Mortgage Loan, and in effect, that HUD will arbitrarily be deprived of its interest in the Property, upon a foreclosure action by the third-party purchaser, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee.

83.     There is no rational justification for HUD's exclusion of Petitioner from the bidding process.

84.     Because the exclusion resulted in HUD violating its statutory duties and recovering less funds for the public than if Petitioner had participated in the sale, *inter alia*, HUD's MHLS 2023-1 violated Petitioner's right to substantive due process under the Fifth Amendment to the U.S. Constitution.

85.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as "contrary to constitutional right, power, privilege, or immunity." *See* 5 U.S.C. § 706(2)(A), (2)(B). Petitioner also seeks review under 5 U.S.C. § 702, and the Court may order declaratory relief pursuant to the APA, as well as pursuant to 28 U.S.C. §§ 2201, for HUD's constitutional violations.

## CLAIM 6
### Violation of Fifth Amendment Right to Equal Protection, Pursuant to 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. §§ 702, 706

86.     The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

87.     Petitioner enjoyed a legitimate claim of entitlement to its interest in the Mortgage Loan (*see* **Exs. 2 & 3**), as well as the Regulatory Agreement (*see* **Ex. 1**).

88.     Petitioner also enjoys a legitimate claim of entitlement to the Property encumbered by the Mortgage Loan, which will inevitably be extinguished in a foreclosure action by the third-

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.: 3:23-CV-_____

PAGE **21** OF **27**

party purchaser of the Mortgage Loan, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee, if the loan sale reflected in MHLS 2023-1 is not set aside by this Court.

89.     Through its own arbitrary conduct in denying Petitioner the ability to fully realize the value of its HTC, in 2006, HUD has directly precipitated the Petitioner's default of the Mortgage Loan and of the Regulatory Agreement (**Ex. 1**), which resulted in an assignment of the Mortgage Loan to HUD. *See* **Ex. 5**.

90.     Now, in excluding Petitioner and any of its affiliates from the bidding process, without offering any explanation for this exclusion, HUD has arbitrarily determined that EGAE will be deprived of its property interest in the Mortgage Loan, and in effect, that HUD will arbitrarily be deprived of its interest in the Property, upon a foreclosure action by the third-party purchaser, MidCap Trust, the assignee, MidCap Funding, and/or any subsequent assignee.

91.     There is no rational justification for HUD's intentional treatment of Petitioner and its affiliates, differently from similarly situated individuals or entities, including any other entity that may have wished to submit a bid on the Mortgage Loan.

92.     Because that differential treatment in intentionally excluding Petitioner has resulted in HUD violating its statutory duties and recovering less funds for the public than if Petitioner participated in the sale, HUD's MHLS 2023-1 violated Petitioner's right to equal protection of the laws, under the Fifth Amendment to the U.S. Constitution.

93.     Under the APA, the Court may "hold unlawful and set aside [this] agency action," as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or as

"contrary to constitutional right, power, privilege, or immunity." *See* 5 U.S.C. § 706(2)(A), (2)(B).

Petitioner also seeks review under 5 U.S.C. § 702, and the Court may order declaratory and/or injunctive relief pursuant to the APA, as well as pursuant to 28 U.S.C. §§ 2201 and 2202, for HUD's constitutional violations.

## CLAIM 7
### Declaratory Relief Pursuant to
### 28 U.S.C. § 2201 and 5 U.S.C. §§ 702 & 706

94.    The Petitioner hereby re-alleges and incorporates by reference all paragraphs set forth above, as if fully alleged herein.

95.    Based upon the foregoing allegations, there is presently existing between the parties hereto an actual, substantial, ongoing controversy that requires the Court's intervention. This request for a declaratory judgment is not seeking an advisory opinion from the Court.

96.    28 U.S.C. § 2201 provides, in relevant part, that

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

97.    All of the parties necessary to resolve the present controversies are presently before the Court, and subject to its jurisdiction.

98.    A declaratory judgment as requested below would resolve all controversies between the parties hereto.

99.     Among the various matters comprising the parties' dispute are:

a.      Whether HUD's sale of the Mortgage Loan violated 5 U.S.C. § 553, for providing insufficient notice and/or otherwise violating HUD's notice-and-comment obligations under the APA;

b.      Whether HUD's sale of the Mortgage Loan violated 12 U.S.C. § 1701z-11 and/or § 1715z-11a, for not serving the goals of the National Housing Act, or otherwise;

c.      Whether HUD's sale of the Mortgage Loan violated 24 C.F.R. Part 290, for not satisfying the procedural and/or other regulatory requirements for the sale of a Multifamily Mortgage Loan, under that Part;

d.      Whether HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to procedural due process, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Petitioner with adequate notice of the announced sale, or otherwise;

e.      Whether HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to substantive due process, for handling Petitioner's interests in real property in an arbitrary fashion, and otherwise depriving Petitioner of rights guaranteed by the U.S. Constitution;

f.      Whether HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to equal protection, for arbitrarily excluding it from the bidding process and

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.: 3:23-cv-_____

PAGE **24** OF 27

thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Petitioner with adequate notice of the announced sale, or otherwise; and

g.     Whether the remedies requested here against HUD, in the form of setting aside the sale of the Mortgage Loan and any assignments relating thereto, are also properly applied as against the third-party purchaser, MidCap Financial, pursuant to the APA or otherwise.

h.     Whether the remedies requested here against HUD, in the form of setting aside the sale of the Mortgage Loan and any assignments relating thereto, are also properly applied as against the assignee currently holding the Mortgage Loan, MidCap Funding, pursuant to the APA or otherwise.

## VI.     RELIEF REQUESTED.

**WHEREFORE**, having set forth the claims for relief above, the Petitioner, EGAE, LLC, respectfully prays for relief as follows:

1.     That the Court declare that HUD's sale of the Mortgage Loan violated 5 U.S.C. § 553, for providing insufficient notice and/or otherwise violating HUD's notice-and-comment obligations under the APA;

2.     That the Court declare that HUD's sale of the Mortgage Loan violated 12 U.S.C. § 1701z-11 and/or § 1715z-11a, for not serving the goals of the National Housing Act, or otherwise;

3.     That the Court declare that HUD's sale of the Mortgage Loan violated 24 C.F.R. Part 290, for not satisfying the procedural and/or other regulatory requirements for the sale of a Multifamily Mortgage Loan, under that Part;

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR     PAGE **25** OF **27**
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Urban Development, et al.*
CASE NO.:  3:23-CV-_____

Case 3:23-cv-00003-KFR     Document 6     Filed 01/10/23     Page 25 of 27

4.     That the Court declare that HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to procedural due process, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Petitioner with adequate notice of the announced sale, or otherwise;

5.     That the Court declare that HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to substantive due process, for handling Petitioner's interests in real property in an arbitrary fashion, and otherwise depriving Petitioner of rights guaranteed by the U.S. Constitution;

6.     That the Court declare that HUD's sale of the Mortgage Loan violated Petitioner's Fifth Amendment right to equal protection, for arbitrarily excluding it from the bidding process and thereby preventing it from avoiding injury to its interests in real property, and/or for not providing Petitioner with adequate notice of the announced sale, or otherwise;

7.     That the Court order declaratory relief: (i) vacating HUD's sale of the Mortgage Loan in MHLS 2023-1 on or around November 16, 2022, and/or setting aside the closing of the Mortgage Loan effective on December 6, 2022, as well as any subsequent assignments of the Mortgage Loan; (ii) declaring that HUD may not sell the Mortgage Loan in the future, as a violation of the National Housing Act and/or the regulatory requirements of 24 C.F.R. Part 290, or in the alternative; (iv) that HUD may not sell the Mortgage Loan without satisfying the notice-and-comment procedures of the APA, and allowing Petitioner to participate in the bidding process; and

8. That the Court order such other relief as is deemed equitable and just.

DATED this 9th day of January, 2023.

REEVES AMODIO, LLC

/s/ Brian Stibitz
Brian Stibitz, Alaska Bar #0106043
500 L Street
Anchorage, AK 99501
T: (907) 222-7102
brian@reevesamodio.com
*Attorney for Petitioner*

ROBERT A. BOUVATTE, PLLC

/s/ Robert Bouvatte
Robert A. Bouvatte, Jr., Fla. Bar #71525
1806 65th Court SE
Tumwater, WA 98501
T: (904) 505-3175
rbouvattelaw@gmail.com
bob@rbouvattepllc.com
*Pro hac vice Attorney for Petitioner*

COMPLAINT FOR DECLARATORY RELIEF AND PETITION FOR
JUDICIAL REVIEW
*EGAE, LLC v. U.S. Dept. of Housing & Human Development, et al.*
CASE NO.: 3:23-CV-_____

PAGE **27** OF **27**