IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

EGAE, LLC, an Alaska limited liability
company,

                Petitioner/Plaintiff,

    vs.

MARCIA FUDGE, in her official
capacity, as Secretary of The UNITED
STATES DEPARTMENT OF
HOUSING & URBAN
DEVELOPMENT, MIDCAP
FINANCIAL TRUST, a Delaware
statutory trust, and MIDCAP
FUNDING INVESTMENT X, LLC, a
Delaware limited liability company,

              Respondents/Defendants.

Case No. 3:23-cv-00003-JMK

**ORDER RE ALL PENDING
MOTIONS**

       Four motions are pending before the Court: (1) Respondent/Defendant

MidCap Funding Investment X, LLC's ("MidCap")[1] *Motion to Appoint a Receiver* at

Docket 19; (2) Petitioner/Plaintiff EGAE, LLC's ("EGAE") *Motion to Dismiss*

*Counterclaims Filed by MidCap Funding Investment X, LLC*, at Docket 26;

---

[1] The Court refers throughout this order to Respondent/Defendant MidCap Funding
Investment X, LLC, as "MidCap." The Court refers to Respondent/Defendant MidCap Financial
Trust by its full name. When referring to both MidCap and MidCap Financial Trust together, the
Court refers to the "MidCap Entities."

(3) Respondent/Defendant and Secretary of the U.S. Department of Housing and Urban Development Marcia Fudge's ("HUD")[2] *Motion to Dismiss* at Docket 35; and (4) MidCap's *Motion to Enforce Right to Inspect Collateral* at Docket 41. These motions are fully briefed.

The Court heard oral argument on EGAE's and HUD's motions to dismiss on August 1, 2023. The parties did not request oral argument as to MidCap's motion to appoint a receiver or its motion to enforce its alleged right to inspect the collateral; the Court deems oral argument on these motions unnecessary for their disposition.

## I.   BACKGROUND

This lawsuit arises from EGAE's challenge to HUD's actions taken in relation to its sale to MidCap Financial Trust of the mortgage loan (the "Mortgage") securing the property at Lot B of McKay Subdivision in Anchorage, Alaska, upon which the McKinley Tower Apartments are built (the "Property"). The parties do not dispute the material facts.

In March 2005, EGAE executed a regulatory agreement (the "Regulatory Agreement") with HUD in which HUD insured the Mortgage encumbering the Property that was issued to EGAE and owned at the time by CW Capital, LLC.[3] EGAE alleges it spent over $12 million rehabilitating the Property to comply with historic preservation laws

---

[2] Although EGAE did not bring suit against HUD itself, the Court refers throughout this order to Secretary Fudge as "HUD" to follow the convention used in Secretary Fudge's motion to dismiss and since EGAE brought suit against Secretary Fudge only in her official capacity as HUD Secretary.

[3] Docket 6 at 2–5 ¶¶ 2, 8, 11–12.

based in part on representations by the National Park Service and Alaska's State Historic Preservation Office that such rehabilitation would allow EGAE to generate historic tax credit incentives.[4] EGAE claims that, as it redeveloped the Property and unsuccessfully sought approvals from HUD to bring in an additional investor, the tax credit incentives became less valuable.[5] EGAE also alleges that HUD failed to include a property tax reserve as an underwriting requirement of the Mortgage, forcing EGAE to use its mortgage payments to cover its tax obligations.[6]

In August 2018, these alleged financial difficulties contributed to EGAE's defaulting on the Mortgage.[7] EGAE has remained in default since that time.[8] In May 2019, at the then-lender's request, the Mortgage was assigned to HUD.[9] In August 2022, with the Mortgage still in default, HUD notified EGAE that it planned to sell the Mortgage in a forthcoming sale.[10] HUD published notice of the Mortgage sale in the Federal Register but, according to EGAE, did not provide any related information on its website.[11] EGAE acknowledges it received notice of the Mortgage sale no later than September 22, 2022, when its representative opened and read a notice letter HUD sent to EGAE.[12]

---

[4] *Id.* at 3–5 ¶¶ 8–9, 13.
[5] *Id.* at 5–6 ¶¶ 14–18.
[6] *Id.* at 7 ¶ 22.
[7] *Id.* ¶ 23.
[8] *See id.* at 8–12 ¶¶ 24–44 (describing actions taken following EGAE's default and through the present).
[9] *Id.* ¶ 24.
[10] *Id.* at 8 ¶¶ 28–29.
[11] *Id.* at 9–10 ¶¶ 30, 34–35.
[12] Docket 6 at 9 ¶ 31.

By December 6, 2022, MidCap Financial Trust had purchased the Mortgage from HUD.[13] By December 21, 2022, MidCap Financial Trust had assigned the Mortgage and its associated deed of trust to MidCap.[14] The circumstances surrounding the Mortgage sale to MidCap Financial Trust as well as the conditions HUD imposed thereupon provide the basis for a substantial portion of EGAE's claims, specifically HUD's prohibiting EGAE and any of its affiliates from participating in the sale's bidding process.[15] EGAE filed this lawsuit to challenge HUD's actions related to the Mortgage sale, contending it was unlawfully deprived of an opportunity to bid on the Mortgage, thereby allegedly losing at least $9 million "when the Mortgage Loan is inevitably foreclosed by [its] holder."[16] Although EGAE only asserts claims against HUD, it asserts that it named the MidCap Entities as Defendants "such that the Court may provide complete relief upon EGAE's petition to hold unlawful and set aside the sale of the mortgage loan."[17]

MidCap responded to EGAE's complaint with counterclaims seeking appointment of a receiver and disgorgement of the revenues EGAE received from the Property dating back to its August 2018 default.[18] MidCap also seeks to enforce its alleged "contractual and statutory right to inspect its loan Collateral."[19] HUD has moved to dismiss

---

[13] *Id.* at 11 ¶ 39.
[14] *Id.* at 12 ¶ 42.
[15] *Id.* at 9–10 ¶ 32–33.
[16] *Id.* at 12 ¶ 43.
[17] *Id.* at 3 ¶¶ 4–5.
[18] Docket 19; Docket 20 at 5–8 ¶¶ 25–35.
[19] Docket 41 at 1.

all of EGAE's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),[20] and EGAE has moved to dismiss all of MidCap's counterclaims under the same rules.[21]

## II.   LEGAL STANDARD FOR MOTIONS TO DISMISS

HUD and EGAE seek to dismiss the claims against each of them for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[22] "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[23] Because the parties do not appear to dispute any of the material facts, both Rule 12(b)(1) motions appear to be facial attacks.[24] In a facial attack, "the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."[25] A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."[26] Likewise, a party may seek dismissal under Rule 12(b)(6) for a complaint's failure to state a claim upon which relief can be granted, but before dismissing a deficient complaint, a court must

---

[20] Docket 35; Docket 36.
[21] Docket 26.
[22] *Id.* at 2; Docket 36 at 2.
[23] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).
[24] *See generally* Docket 26; Docket 32; Docket 36.
[25] *Safe Air*, 373 F.3d at 1039.
[26] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

provide the plaintiff with an opportunity to amend when justice requires, unless to do so would be futile.[27]

## III. DISCUSSION

The Court begins its analysis with the motions to dismiss, beginning with HUD's motion to dismiss EGAE's complaint and then turning to EGAE's motion to dismiss MidCap's counterclaims. The Court first considers the parties' jurisdictional arguments under Rule 12(b)(1) and then, if necessary, the portions of those motions alleging a failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[28] If necessary, the Court will consider MidCap's motions to appoint a receiver and enforce its alleged right to inspect the collateral.

### A. HUD's Motion to Dismiss EGAE's Claims

EGAE's complaint asserts seven claims of relief against HUD.[29] First, EGAE alleges that HUD violated the notice-and-comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by failing to provide EGAE with adequate notice of the Mortgage sale and its closing, as well as prohibiting EGAE from commenting or otherwise participating in the alleged rulemaking process comprising the sale.[30] Second, EGAE alleges that HUD violated the National Housing Act ("NHA"),

---

[27] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (first citing Fed. R. Civ. P. 15(a); and then citing *Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir. 1988)).

[28] *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle,* 7 Wall. 506, 514 (1868))).

[29] Docket 6 at 12–25 ¶¶ 45–98.

[30] *Id.* at 12–15 ¶¶ 45–55.

12 U.S.C. §§ 1701z-11 and 1715z-11a, by excluding EGAE from the bidding process and thereby failing to consider the federal government's financial interests and choose the least costly alternative for disposing of the Mortgage.[31] Third, EGAE alleges that HUD violated its own regulations implementing the NHA at 24 C.F.R. Part 290 by selling the Mortgage despite the fact that foreclosure was unavoidable.[32] Fourth, EGAE alleges that HUD violated its Fifth Amendment procedural due process right by failing to provide EGAE with an opportunity to participate in the Mortgage sale bidding process, thereby stripping EGAE of any means to ensure its rights were protected.[33] Fifth, EGAE alleges that HUD violated its Fifth Amendment right to substantive due process because there was no rational justification for HUD's exclusion of EGAE from the bidding process.[34] This allegedly resulted in HUD's violating its statutory duties and recovering less funds than if EGAE had participated in the Mortgage sale, while also depriving EGAE of its property interest in the Mortgage and the Property.[35] Sixth, EGAE alleges that HUD violated its Fifth Amendment right to equal protection by excluding EGAE from the Mortgage sale bidding process without a rational justification, thereby intentionally treating EGAE and its affiliates differently from similarly situated individuals or entities that may have wished to submit a bid on the Mortgage.[36] Seventh, EGAE asserts claims for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the APA, 5 U.S.C. §§ 702

---

[31] *Id.* at 15–17 ¶¶ 56–64.
[32] *Id.* at 17–18 ¶¶ 65–71.
[33] *Id.* at 18–19 ¶¶ 72–77.
[34] *Id.* at 20–21 ¶¶ 78–85.
[35] *Id.* at 21 ¶ 84.
[36] *Id.* at 21–23 ¶¶ 86–93.

and 706, concerning "all controversies between the parties" and application of the requested remedies against the MidCap Entities in addition to HUD.[37] Lastly, EGAE seeks vacatur of HUD's sale of the Mortgage or its closing, as well as any subsequent assignments, a declaration that HUD may not sell the Mortgage in the future, or a declaration that HUD may not sell the Mortgage without satisfying the APA's notice-and-comment requirements and allowing EGAE to participate in the bidding process.[38]

In its motion to dismiss, HUD argues that the Court lacks subject-matter jurisdiction over EGAE's claims because EGAE fails to establish a waiver of sovereign immunity and lacks standing because it fails to state a legally cognizable injury-in-fact.[39] HUD asserts that the APA does not waive its sovereign immunity because it exercised its statutory discretion pursuant to 12 U.S.C. § 1715z-11a(a), which allows HUD to dispose of mortgages like EGAE's on terms of its own choosing "notwithstanding any other law"; meaning that HUD's actions to sell the Mortgage were committed to its discretion by law and that there is no meaningful standard for review.[40] HUD also claims that no general jurisdictional statutory or constitutional provisions provide a waiver of its sovereign immunity and that the limited waiver available pursuant to the NHA does not apply.[41] HUD contends that EGAE lacks standing because it does not establish an injury-in-fact

---

[37] *Id.* at 23–25 ¶¶ 94–99.
[38] *Id.* at 26.
[39] Docket 36 at 9–19.
[40] *Id.* at 9–12.
[41] *Id.* at 12–14.

due to its "bare assertions of an interest" in the Mortgage and what amounts only to a "unilateral desire to be included" in the Mortgage sale process.[42]

In response, EGAE contends that HUD has not waived its sovereign immunity because (1) compliance with the NHA and HUD's implementing regulations is not committed to HUD's absolute and unreviewable discretion, and (2) it asserts constitutional claims and seeks only declaratory relief.[43] EGAE claims it has standing because it "has ongoing, legitimate claims of entitlement to its real property" and the APA requires notice and comment.[44] As for its alleged injuries, EGAE asserts that (1) it suffers an injury-in-fact from the diminishment of its interest in the Mortgage; (2) it is within the "zone of interest" of the NHA and HUD's implementing regulations by virtue of its connection to HUD through the Regulatory Agreement; and (3) both its equal protection rights and procedural due process rights were violated by its exclusion from the Mortgage sale process while the MidCap Entities were permitted to participate and by HUD's alleged breaches of the Regulatory Agreement.[45]

**(1)    Sovereign immunity**

Sovereign immunity protects the federal government from suit unless it waives its immunity.[46] "A court lacks subject-matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim."[47] Thus, a court has subject-

---

[42] *Id.* at 14–19.
[43] Docket 48 at 6–14.
[44] *Id.* at 15–19.
[45] *Id.* at 19–29.
[46] *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).
[47] *Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003) (citation omitted).

matter jurisdiction only when the United States has expressly waived its sovereign immunity.[48] As the party with the burden of proof, the plaintiff must show that a waiver of sovereign immunity exists.[49]

### (a) The Section 1701z-11 and 1715z-11a claim

The NHA, at 12 U.S.C. § 1702, expressly waives HUD's sovereign immunity in limited circumstances: "The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX–B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."[50] A different section of the same title of the U.S. Code, Section 1715z-11a(a), provides HUD with so-called "flexible authority" pertaining to multifamily housing projects: "During fiscal year 1997 and fiscal years thereafter, the Secretary may manage and dispose of . . . multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may determine, notwithstanding any other provision of law." Another section of the same title of the U.S. Code, Section 1701z-11, establishes standards governing HUD's sale of mortgages in certain instances. EGAE maintains that, as part of "the *very same* statutory scheme," Section 1715z-11a(a) should be harmonized with Section 1701z-11 and read to authorize a waiver of HUD's sovereign immunity.[51]

---

[48] *See Miller v. Wright*, 705 F.3d 919, 928 (9th Cir. 2013) (affirming dismissal for lack of jurisdiction where tribe did not waive tribal sovereign immunity).

[49] *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("[I]t follows that [the plaintiff] must carry throughout the litigation the burden of showing that he is properly in court.").

[50] 12 U.S.C. § 1702.

[51] Docket 48 at 8–10.

*EGAE, LLC v. Fudge et al.*
Order Re All Pending Motions

Case No. 3:23-cv-00003-JMK
Page 10

Case 3:23-cv-00003-JMK   Document 71   Filed 09/13/23   Page 10 of 31

Although Sections 1715z-11a(a) and 1701z-11 are located in the same title of the U.S. Code, and Section 1715z-11a(a) is located within Subchapter II of that title, Section 1715z-11a(a) is not part of the NHA. Congress enacted Section 1715z–11a(a) through a separate federal law promulgated after the NHA and chose to include strong, unambiguous language making clear that the discretion it accords HUD is not subject to "any other provision of law."[52] Other district courts evaluating the interplay between these two sections have recognized this, concluding that the NHA's limited waiver of sovereign immunity does not waive HUD's immunity with respect to actions taken pursuant to the flexible authority provided by Section 1715z-11a(a).[53] The Court agrees with those courts' analyses and finds that the NHA's limited waiver of sovereign immunity must be narrowly construed and does not apply to Section 1715z-11a(a).[54] Similarly, the Court finds that the standards governing mortgage sales in Section 1701z-11 do not provide a measurable standard against which to judge the sale of EGAE's Mortgage, as that section's provisions contain a similar provision allowing the HUD Secretary to sell mortgages on unsubsidized projects like the Property "on such terms and conditions as the Secretary may prescribe" and "[n]otwithstanding any other provision of law."[55]

---

[52] 12 U.S.C. § 1715z-11a(a); *see also* Editorial Notes to § 1715z-11a, https://uscode .house.gov/view.xhtml?req=granuleid:USC-prelim-title12-section1715z-11a&num=0&edition=p relim (last visited Aug. 26, 2023) ("Section [1715z] was enacted as part of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, and not as part of the National Housing Act which comprises this chapter.").

[53] *Ku v. HUD*, No. 11 CV 6858(VB), 2012 WL 2864509, at *3 (S.D.N.Y. May 14, 2012), *aff'd on other grounds*, 508 F. App'x 14 (2d Cir. 2013); *Jewish Ctr. For Aged v. HUD*, No. 4:07-CV-750 (JCH), 2007 WL 2121691, at *5 (E.D. Mo. July 24, 2007).

[54] *See Lane v. Pena*, 518 U.S. 187, 192 (1996) (expressing principle that a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign.").

[55] 12 U.S.C. § 1701z-11(k)(4).

*EGAE, LLC v. Fudge et al.*                                    Case No. 3:23-cv-00003-JMK
Order Re All Pending Motions                                              Page 11
Case 3:23-cv-00003-JMK   Document 71   Filed 09/13/23   Page 11 of 31

Accordingly, the Court finds that the NHA does not waive HUD's sovereign immunity or allow judicial review of the Mortgage sale under Sections 1701z-11 or 1715z-11a. Thus, the Court lacks subject-matter jurisdiction over EGAE's claim and must dismiss it.

**(b)** **The APA notice-and-comment claim**

Like the NHA, the APA contains a limited waiver of sovereign immunity,[56] but it does not subject to judicial review agency actions that are "committed to agency discretion by law."[57] A court lacks jurisdiction and therefore cannot provide "any review at all" if the statute or regulation authorizing an agency's action "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."[58] A court must dismiss a claim for lack of jurisdiction pursuant to Section 701(a)(2) if there is "no law to apply."[59]

EGAE contends that there is "law to apply" here, namely 12 U.S.C. § 1701z-11(a), which provides standards pursuant to which HUD must "manage or dispose of multifamily housing projects . . . subject to a mortgage held by the Secretary."[60] However, it is undisputed that HUD sold the Mortgage pursuant to its flexible authority under

---

[56] 5 U.S.C. § 702.
[57] 5 U.S.C. § 701(a)(2).
[58] *Heckler v. Chaney*, 470 U.S. 821, 828, 830 (1985) (emphasis omitted).
[59] *Ctr. for Pol'y Analysis on Trade & Health v. Off. of U.S. Trade Representative*, 540 F.3d 940, 944 (9th Cir. 2008), *as amended* (Oct. 8, 2008) (quoting *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000)).
[60] Docket 48 at 7–10 (citation omitted).

Section 1715z–11a(a),[61] which contains an express provision that supersedes "any other provision of law," including other provisions within the same title of the U.S. Code.[62] A court can read Sections 1715z-11a(a) and 1701z-11a together without negating their meanings. Even if there were a conflict between these provisions, Section 1715z–11a(a) must take precedence given its "notwithstanding" clause.[63] Additionally, if two statutes conflict, "the later and more specific statute usually controls."[64] Section 1715z-11a(a) is not only the later of the two statutes, but it also appears more specific than Section 1701z-11a with respect to HUD's discretion when selling a mortgage loan in the years following 1997.[65] EGAE's contention that HUD has not "been granted 'unfettered' *carte blanche*" is unavailing because Section 1715z–11a(a) expressly provides that HUD may establish any "terms and conditions" for managing and disposing of multifamily loans, regardless of any other law. HUD's decision to prohibit a defaulting mortgagor from bidding on its own

---

[61] Docket 6-7 at 3 ("This is a sale of unsubsidized mortgage loans, pursuant to Section 204(a) of the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, (12 U.S.C. 1715z–11a(a)).").

[62] 12 U.S.C. § 1715z-11a(a).

[63] *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." (citations omitted)); *Galaza v. Mayorkas*, 61 F.4th 669, 673 (9th Cir. 2023) (holding that the Aviation and Transportation Security Act's "use of the phrase 'notwithstanding any other provision of law' reflects legislative intent to preempt the provisions of the Rehabilitation Act" (citation omitted)).

[64] *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1164 (9th Cir. 2022) (citation omitted), *cert. denied*, 143 S. Ct. 508, 214 (2022).

[65] As noted above, even if Section 1701z-11a were "more specific" than Section 1715z-11a(a) with respect to the sale of a mortgage loan, Section 1701z-11a(k)(4) provides similarly broad discretion to HUD with no meaningful legal standard to apply with respect to unsubsidized projects like the Property: "Notwithstanding any other provision of law, the Secretary may sell mortgages held on projects that are not subsidized or formerly subsidized projects on such terms and conditions as the Secretary may prescribe."

mortgage was a "term or condition" imposed pursuant to this discretion. Congress spoke directly on this issue by declaring that HUD's authority is subject to no other law.

EGAE's citations to *Walker v. Pierce*, 665 F. Supp. 831 (N.D. Cal. 1987); *United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980); and *Russell v. Landrieu*, 621 F.3d 1037 (9th Cir. 1980), are unpersuasive, not controlling, and largely irrelevant.[66] These cases, and others that EGAE cites, predate the enactment of Section 1715z-11a(a) and do not interpret statutory language nearly as strong as the language Congress chose to include in Section 1715z-11a(a)'s "notwithstanding" clause. For example, *Walker*, a case EGAE cites for the proposition that the sale of mortgage loans is subject to the APA's notice-and-comment procedures and must be rational, does not address sovereign immunity once in the entire decision.[67]

As a result, the Court finds that the APA does not waive HUD's sovereign immunity or allow judicial review of HUD's alleged failure to follow the APA's notice-and-comment procedures. The Court lacks subject-matter jurisdiction over EGAE's APA claim and must dismiss it.

### (c) The regulatory claim

EGAE alleges that HUD violated the regulations it promulgated at 24 C.F.R. Part 290, which govern "the management and disposition of multifamily housing projects and the sale of HUD-held multifamily mortgages."[68] As an initial matter, HUD

---

[66] Docket 48 at 11.
[67] *See generally* 665 F. Supp. 831.
[68] Docket 6 at 17 ¶¶ 65–71; 24 C.F.R. § 290.1.

promulgated these regulations pursuant to its authority provided by 12 U.S.C. § 1701z-11 rather than 12 U.S.C. § 1715z-11a,[69] so their relevance to HUD's actions taken pursuant to its Section 1715z-11a flexible authority is questionable, at best. Regardless, HUD's motion to dismiss does not directly address whether HUD has waived its sovereign immunity with respect to an alleged violation of its own regulations at 24 C.F.R. Part 290.[70] Instead, HUD acknowledges that Section 1701z-11 is "a provision of the National Housing Act,"[71] and does not appear to dispute that the Section 1702 waiver of sovereign immunity applies to Section 1701z-11. Thus, HUD has not advanced a credible argument that its sovereign immunity bars a suit alleging a violation of these regulations.

Even if it had advanced such an argument, HUD cannot escape judicial review of an alleged violation of its own regulations based solely on sovereign immunity grounds. The Ninth Circuit has cautioned that "[w]hen administrative bodies promulgate rules or regulations to serve as guidelines, these guidelines should be followed. Failure to follow such guidelines tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process."[72] This instruction applies

---

[69] 24 C.F.R. § 290.1.

[70] *See generally* Docket 36. In its sovereign immunity discussion, HUD only contends that 24 C.F.R. § 290.35 does not "provide a meaningful standard . . . for review of HUD action under the flexible authority provision." Docket 36 at 11 (citation omitted). The Court agrees with this proposition but finds it irrelevant to the question of whether HUD waived its sovereign immunity with respect to compliance with its regulations at 24 C.F.R. Part 290.

[71] Docket 36 at 7.

[72] *NLRB v. Welcome–American Fertilizer Co.*, 443 F.2d 19, 20 (9th Cir. 1971) (citation omitted); *see also Ruangswang v. INS*, 591 F.2d 39, 46 n.12 (9th Cir. 1978) ("[N]umerous authorities hold 'that federal courts will require federal agencies to abide by the agency's own regulations, [e]ven where the regulations are more generous than required by law." (citations and internal quotations omitted)); *cf. N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988)

---

notwithstanding a statutory provision's granting an agency "unfettered discretion," as agencies themselves can limit that discretion through regulation.[73] In promulgating regulations that establish standards pursuant to which an agency's actions can be evaluated, agencies cannot rely on sovereign immunity to insulate themselves from alleged violations thereof.[74] The regulations at 24 C.F.R. § 290.35 establish standards for the disposition of delinquent mortgages: HUD "will not" sell delinquent mortgages if (1) it "believes that foreclosure is unavoidable" and (2) "[t]he property securing the mortgage is occupied by very low-income tenants" who likely would have to pay an excessive portion of their income on rent if HUD were to sell the mortgage. Again, these regulations do not appear to be relevant to the actions HUD took here pursuant to its flexible authority under Section 1715z-11a, but the merits of EGAE's claim are not yet properly before the Court. As a result, the Court finds that sovereign immunity does not bar EGAE from bringing a claim that HUD violated its regulations promulgated at 24 C.F.R. Part 290.

---

("It was an abuse of discretion not to [through an injunction] order the Secretary to follow his own rules.").

[73] *See Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) ("Even where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." (citation and internal quotation marks omitted)).

[74] *See Service v. Dulles*, 354 U.S. 363, 370, 372 (1957) (reviewing claim that Secretary of State violated the State Department's own regulations governing the termination of employees despite having "absolute discretion"); *Jewish Ctr. for Aged v. HUD*, No. 4:07-CV-750 (JCH), 2007 WL 2121691, at *5 n.9 (E.D. Mo. July 24, 2007) ("Had [the plaintiff] pled that HUD had violated its own regulations, the Court may have come to a different conclusion [concerning whether HUD waived its sovereign immunity]." (citation omitted)).

*EGAE, LLC v. Fudge et al.*                                           Case No. 3:23-cv-00003-JMK
Order Re All Pending Motions                                                         Page 16
Case 3:23-cv-00003-JMK   Document 71   Filed 09/13/23   Page 16 of 31

(d)     **The Constitutional claims**

EGAE's remaining substantive claims allege violations of its Fifth Amendment rights. HUD contends that neither the general jurisdictional statutes EGAE cites nor the Constitution "constitute an independent waiver of sovereign immunity."[75] EGAE responds that it is seeking only injunctive and declaratory, rather than monetary, relief, and so the APA's waiver of sovereign immunity applies to its constitutional claims.[76] The Court agrees with EGAE that Section 702 of the APA waives sovereign immunity for injunctive or equitable relief against a federal agency when the plaintiff's claims arise from the Constitution.[77] Even if the APA's waiver of sovereign immunity did not apply, Ninth Circuit courts operate under an assumption "that the courts will be open to review of constitutional claims, even if they are closed to other claims."[78] The Court therefore must proceed to its standing analysis as to EGAE's constitutional claims.

(2)     **Standing**

Because sovereign immunity does not strip the Court of jurisdiction over EGAE's regulatory and constitutional claims, it must determine whether EGAE has standing to pursue these claims in federal court. A federal court does not have subject-

---

[75] Docket 36 at 12–13 (citations omitted).

[76] Docket 48 at 13–14 (citations omitted).

[77] 5 U.S.C. § 702 ("An action . . . seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . shall not be dismissed . . . on the ground that it is against the United States . . . ."); *see also The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 523–24 (9th Cir. 1989) (reversing district court's decision that sovereign immunity barred churches from pursuing declaratory and injunctive relief to redress alleged violations of the First and Fourth Amendments by the United States, Department of Justice, and Immigration and Naturalization Service).

[78] *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018) (citing *Am. Fed'n of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1034–39 (9th Cir. 2007)).

matter jurisdiction if the plaintiff lacks standing.[79]  To establish standing, a plaintiff must

demonstrate that (1) it suffered an "injury-in-fact"; (2) the injury is "fairly traceable" to the

challenged conduct; and (3) it is likely that a favorable decision will redress the injury.[80]

To establish an injury-in-fact, a plaintiff must identify "an invasion of a legally protected

interest" that is "concrete and particularized" as well as "actual or imminent, not

conjectural or hypothetical."[81]  EGAE appears to assert several injuries that it contends

accord it standing:  (1) "the eventual loss of the Property," (2) "injuries to EGAE's

exclusive rights in [the Property]" and (3) "the loss of Petitioner's rights as against HUD

arising from the Regulatory Agreement."[82]  Put differently, EGAE alleges injuries from

the diminishment of its "rights in the Mortgage Loan and in the Property."[83]

   None of EGAE's alleged injuries are "injuries-in-fact."  The first two, the

"eventual" loss of the Property and injuries to EGAE's exclusive rights in the Property, are

merely conjectural.  EGAE has not alleged that it has lost the Property.[84]  Nor has it alleged

a loss of any of its exclusive rights to operate and own the Property at this point in time.[85]

Although MidCap has filed motions purporting to enforce its alleged rights to monitor and

inspect the Property,[86] EGAE has not alleged, and presumably cannot allege, that it has

---

[79] *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

[80] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations and citations omitted).

[81] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560).

[82] Docket 48 at 19.

[83] *Id.* at 20.

[84] *See, e.g.*, Docket 6 at 2 ¶ 2 (pleading that EGAE is the current owner of the Property).

[85] *See generally* Docket 6.

[86] Docket 19; Docket 41.

*EGAE, LLC v. Fudge et al.*     Case No. 3:23-cv-00003-JMK
Order Re All Pending Motions          Page 18

Case 3:23-cv-00003-JMK   Document 71   Filed 09/13/23   Page 18 of 31

lost any rights in the Property as a result of the Mortgage sale.[87] As for the Regulatory Agreement, EGAE fails to explain how HUD's cancellation of that agreement, which imposed obligations on EGAE in addition to those imposed through the Mortgage and deed of trust, harms it in any way.[88] Indeed, the Regulatory Agreement contains only obligations that provide burdens to EGAE; the Court is unaware of any benefit that that agreement confers to EGAE.[89] Perhaps most importantly, all of EGAE's alleged injuries resulted from its own lapses, not from actions HUD took: EGAE's failure to pay its Mortgage obligations and file audited financial statements, both of which EGAE does not credibly dispute.[90] Although EGAE attempts to analogize its alleged hypothetical injuries to that which would result from the construction of a road in a national forest,[91] the injuries alleged here are too remote to constitute an injury-in-fact when foreclosure is not necessarily imminent and when EGAE could avoid its alleged injuries by becoming current on the Mortgage.[92]

---

[87] *See generally* Docket 6; Docket 48.

[88] *See generally* Docket 6; Docket 48.

[89] *See generally* Docket 6-1.

[90] *See* Docket 6 at 8 ¶ 23 (admitting that EGAE defaulted on the Mortgage); Docket 15-14 at 2 (noting EGAE's failure to submit annual financial reports required pursuant to the Regulatory Agreement).

[91] Docket 48 at 19 (citing *Southeast Alaska Conservation Council v. U.S. Forest Service, 413 F. Supp. 3d 973, 980–81 (D. Alaska 2019)*).

[92] According to a document EGAE filed in a state-court action, MidCap has filed a notice of foreclosure, but that notice expressly allows EGAE to cure its default and terminate the foreclosure proceedings by paying its defaulted sum. Compl. for Injunctive Relief Ex. E at 2, *EGAE, LLC v. Tr. Servs. Of Alaska Inc.*, Case No. 3AN-23-06829 CI (Alaska Super. Ct. June 19, 2023) (citing Alaska Stat. § 34.20.080(e)). EGAE brought that action in Alaska Superior Court to enjoin foreclosure proceedings. *Id.*

To the extent EGAE asserts additional harms from its exclusion from the bidding process or deprivation of its rights secured by the Fifth Amendment or federal law, EGAE must articulate a legally cognizable interest that HUD's actions injured. "A constitutionally cognizable property interest in a benefit requires more than 'an abstract need or desire' or a 'unilateral expectation of it'—rather, there must be 'a legitimate claim of entitlement.'"[93] To assert such an interest, a plaintiff must show "that an existing law, rule, or understanding makes the conferral of a benefit mandatory."[94] "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."[95] EGAE's claims fail because EGAE cannot show that HUD invaded a legally cognizable interest. EGAE had no legally protected interest in participating in the Mortgage sale auction because HUD has statutory discretion to set the terms of the auction "notwithstanding any other provision of law."[96] EGAE identifies no provision in the Constitution or any federal law that requires HUD to include a defaulted mortgagor in the auction for the sale of a defaulted loan or to treat a defaulted mortgagor as it would any other prospective loan bidder. Nor does the Regulatory Agreement provide EGAE with any "rights against HUD."[97]

---

[93] *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

[94] *Id.* (citations and internal quotation marks omitted).

[95] *Town of Castle Rock*, 545 U.S. at 756 (citation omitted).

[96] 12 U.S.C. § 1715z-11a(a); *see also Ku*, 2012 WL 2864509, at *5 ("Plaintiff had no legally protected interest in participating in the auction because HUD has statutory discretion to set the terms of the auction.").

[97] Docket 48 at 22; *see generally* Docket 6-1.

To the contrary, HUD's decision to exclude EGAE from participating in the Mortgage sale to prevent it from potentially reaping a windfall from its default appears sound and rational. The cases EGAE cites concerning tenants who lived in properties subject to HUD loans or homeowners defending against foreclosure[98] are inapposite. EGAE is not a tenant, nor is it defending against foreclosure in this action. Foreclosure has not yet happened and may not happen. EGAE had, and may still have, an opportunity to avoid foreclosure if it meets its legal obligations pursuant to the Mortgage.[99]

EGAE may have been singled out with respect to the bidding on this individual Mortgage, but the record reveals that EGAE had no reasonable expectation entitling it to bid on it. By all indications, HUD's treatment of EGAE was fair. EGAE defaulted on its Mortgage, and HUD treated other defaulted mortgagors whose loans were sold in the same sale similarly by excluding them from bidding on their own loans.[100] Accordingly, EGAE has not established an injury-in-fact and so does not have standing to pursue its remaining substantive claims. The Court therefore lacks subject-matter jurisdiction over EGAE's substantive claims identified in Counts I through VI of the complaint and must dismiss them. Because the Court lacks subject-matter jurisdiction over

---

[98] *See, e.g.*, Docket 48 at 20 (citing *Walker*, 665 F. Supp. at 843, a case involving claims brought by tenants); Docket 48 at 22 (citing *Pagan-Negron v. Wells Fargo, N.A.*, Civil Action No. SA-11-CV-398-XR, 2011 WL 10604778, at *11 (W.D. Tex. Sept. 6, 2011), a case in which a court found that a plaintiff may assert a bank's alleged failure to comply with HUD regulations as a defense against foreclosure from the bank)).

[99] Additionally, as one court noted, it is "disingenuous" for a defaulting mortgagor to claim that a foreclosure sale would harm it. *Howe v. U.S. Bank National Association as Tr. for the RMAC Trust Series 2016-CTT*, 440 F. Supp. 3d 99, 104 (D. Mass. 2020) (citation omitted).

[100] Docket 6-7 at 3–4 (listing types of entities forbidden from bidding on EGAE's Mortgage sale and the other mortgage loan sales occurring at the same time).

EGAE's substantive claims, it also lacks subject-matter jurisdiction over and must dismiss EGAE's declaratory claim asserted in Count VII.[101]

Because the Court finds that it lacks jurisdiction over all of EGAE's claims, it need not reach the parties' arguments for dismissal pursuant to Rule 12(b)(6). Even if the Court were to reach those arguments, it would still find that EGAE's claims fail as a matter of law. Section 1715z-11a(a) provides HUD "with discretion to set the terms and conditions for disposing of a multifamily mortgage."[102] HUD reasonably could invoke this discretion to restrict the eligible loan bidders and choose adjudication—which is not subject to the APA's notice-and-comment requirements—rather than rulemaking to facilitate the Mortgage sale.[103]

Finally, the Court finds that any amendment of EGAE's complaint would be futile because a new complaint could not survive a motion to dismiss given (1) HUD's

---

[101] In *Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity*, 771 F.3d 632, 635 (9th Cir. 2014) (citation omitted), the Ninth Circuit noted that the Declaratory Judgment Act "does not create new substantive rights, but merely expands the remedies available in federal courts." In other words, the Declaratory Judgment Act "did not expand the jurisdiction of federal courts" and authorizes courts to issue declaratory judgments only to resolve "controversies which are such in the constitutional sense." *Id.* (citations and internal quotation marks omitted). With no jurisdiction over EGAE's substantive claims, the Court has no jurisdiction over EGAE's claim for declaratory relief. *See Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) (observing that the Declaratory Judgment Act "in no way modifies the district court's jurisdiction, which must properly exist independent of the" Declaratory Judgment Act).

[102] *Ku v. HUD*, 508 F. App'x 14, 17 (2d Cir. 2013).

[103] As an adjudicatory action that "resolve[d] disputes among specific individuals in specific cases" and had "an immediate effect on specific individuals," HUD had discretion to forego the APA's rulemaking procedures in implementing the Mortgage sale. *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994); *see also MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1151 (9th Cir. 2008) ("A notice and comment period is generally required for agency rulemaking, but not for adjudications." (first citing 5 U.S.C. § 553; and then citing *Yesler*, 37 F.3d at 448)).

sovereign immunity and (2) that any efforts to allege facts specifying more concrete harms would contradict the facts already asserted reflecting the self-inflicted nature of EGAE's harms and the lack of a legally cognizable interest in the sale of a mortgage on which EGAE defaulted.[104] As a result, the Court dismisses EGAE's claims with prejudice.

## B. EGAE's Motion to Dismiss MidCap's Counterclaims

In its amended counterclaim, MidCap asserts two claims against EGAE. MidCap first requests appointment of receiver to protect the Property pursuant to Alaska Stat. § 09.40.240 and the deed of trust, asserting that EGAE has not paid its obligations due pursuant to the Mortgage documents and thus defaulted on the Mortgage while refusing to accede to MidCap's demands to surrender the Property's rents, income, and profits.[105] MidCap reasserts and expands upon this claim in its motion to appoint a receiver.[106] Second, MidCap brings a claim for disgorgement, return of the collateral, or conversion, asserting that the deed of trust entitles it to all rents, profits, and income the Property generated since EGAE's default on August 1, 2018.[107] MidCap requests disgorgement of these sums and all future such sums or, in the alternative, conversion damages in excess of $100,000.[108]

---

[104] *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." (citation omitted)).

[105] Docket 20 at 5–6 ¶¶ 25–30.

[106] Docket 19.

[107] Docket 20 at 6–7 ¶¶ 31–34.

[108] *Id.* at 7 ¶ 35.

EGAE seeks dismissal of MidCap's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[109] The crux of EGAE's arguments is that MidCap's claims are state law claims over which MidCap failed to sufficiently allege federal subject-matter jurisdiction.[110] EGAE asserts that MidCap's claims do not present a federal question, and so the Court should not exercise supplemental jurisdiction because they do not arise from the same "nucleus of operative facts" as the claims in EGAE's complaint.[111] If the Court finds that it does have jurisdiction over MidCap's counterclaims, EGAE urges the Court to decline from exercising that jurisdiction given that the dispute properly before the Court in its view is its APA petition rather than a state foreclosure process.[112] EGAE also challenges as facially invalid the assignment of the Mortgage between the two MidCap Entities.[113]

In its opposition, MidCap asserts for the first time that the Court has diversity jurisdiction over its counterclaims, and so it requests leave to amend its complaint such that it can adequately plead the jurisdictional prerequisites.[114] MidCap also argues that, if the Court does not have diversity jurisdiction over its counterclaims, the Court has supplemental jurisdiction because they are compulsory counterclaims or, alternatively, permissive counterclaims that are "so related" to EGAE's claims as to "form part of the same case or controversy."[115] MidCap urges the Court to consider its counterclaims

---

[109] Docket 26 at 2.
[110] *Id.* at 5–7, 9–21.
[111] *Id.* at 9–21.
[112] *Id.* at 16–21.
[113] *Id.* at 7–8.
[114] Docket 29 at 5–10, 33–34.
[115] *Id.* at 10–15 (citations omitted).

because, in its view, the factors that would warrant a court's declining to exercise supplemental jurisdiction or otherwise abstaining from considering the claims are not present, whereas judicial economy, convenience, and fairness weigh in favor of the Court's considering those claims here.[116] Lastly, MidCap maintains that EGAE's motion is essentially a motion for summary judgment because it asks the Court to consider evidence from outside the pleadings; regardless, it asserts that the MidCap Entities' assignment of the Mortgage is valid.[117]

The Court begins its analysis with the threshold determination of whether it has jurisdiction over MidCap's counterclaims. MidCap acknowledges that it neglected in both its original counterclaims[118] and amended counterclaims[119] to specifically cite to the authority that confers the Court with jurisdiction.[120] MidCap does not appear to dispute that this omission violates both Local Civil Rule 8.1(b) and Federal Rule of Civil Procedure 8(a).[121] Still, MidCap maintains that its pleading deficiency "does not make the pleading insufficient if, as a whole, the allegations in the complaint support the conclusion that the elements of diversity jurisdiction are met."[122] MidCap cites several authorities,

---

[116] *Id.* at 15–26.

[117] *Id.* at 28–32.

[118] Docket 15.

[119] Docket 20.

[120] Docket 29 at 8, 26.

[121] *See generally* Docket 29. D. Alaska Loc. Civ. R. 8.1(b) requires a counterclaimant to provide "[t]he short and plain statement of jurisdictional grounds required by Fed. R. Civ. P. 8(a) . . . at the beginning of the body of the complaint, with citations to any federal statutes or constitutional provisions upon which jurisdiction may be based." Federal Rule of Civil Procedure 8(a) requires a pleading stating a claim for relief to contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."

[122] Docket 29 at 8–9 (citations omitted).

including a Supreme Court decision and a decision from another district court in this Circuit, to support the proposition that a court can, and should, overlook jurisdictional pleading deficiencies if the elements establishing jurisdiction are present in the pleadings.[123] These authorities support the proposition for which MidCap cites them.[124] And it appears from the face of EGAE's complaint and MidCap's counterclaim and that the necessary elements of diversity jurisdiction may be met. EGAE's complaint alleges that the parties are diverse in citizenship, with EGAE being an Alaska limited liability company and MidCap being a Delaware limited liability company.[125] Additionally, MidCap pleaded an amount in controversy of over $100,000 in conversion damages.[126]

EGAE does not dispute the parties' diversity of citizenship, but it challenges MidCap's estimated $100,000 in conversion damages pursuant to the "legal certainty" test that allows a court to look beyond a claimant's alleged amount in controversy when it is implausible.[127] EGAE argues that MidCap cannot look to the value of the Mortgage as evidence of the amount in controversy and that MidCap could not have plausibly alleged

---

[123] *Id.* at 8–9 (first citing *Scheuer v. Rhodes*, 416 U.S. 232, 234 n.2 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); then citing *Chou v. Chow*, No. C-05-3203 MMC, 2006 WL 463518, at *2 (N.D. Cal. 2006), *aff'd*, 234 Fed. App'x. 610 (9th Cir. 2007); then citing *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998); and then citing Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3602.1 (3d ed. 2002)).

[124] *See, e.g.*, *Scheuer*, 416 U.S. at 234 n.2 (noting existence of diversity jurisdiction despite a complaint's failure to follow Federal Rule 8(a) because the complaint alleged facts supporting diversity jurisdiction); *Chou*, 2006 WL 463518, at *2 ("Even where a complaint does not contain adequate jurisdictional allegations, however, the Court should not dismiss if the factual allegations of the complaint demonstrate a basis for jurisdiction." (citing *Cook*, 141 F.3d at 326)).

[125] Docket 6 at 2–3 ¶¶ 2, 5.

[126] Docket 20 at 7 ¶ 35.

[127] Docket 32 at 13–15 (first citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362 (9th Cir. 1986); then citing *Morris v. Hotel Riviera*, 704 F.2d 1113, 1115 (9th Cir. 1983); and then citing *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775–76 (9th Cir. 2017)).

over $100,000 in damages for "disgorgement, return of collateral or conversion" at the time it filed its first counterclaim in late January 2023, just over one month after the alleged assignment of the Mortgage and deed of trust from MidCap Financial Trust to MidCap.[128]

To the extent there is a factual dispute concerning the amount in controversy, the Court could insert itself into this dispute and "resolve th[e]se factual disputes itself."[129] But doing so is unnecessary under the present circumstances. MidCap has violated both the Local Civil Rules and the Federal Rules of Civil Procedure despite having had multiple opportunities to sufficiently plead the prerequisites for diversity or supplemental jurisdiction. The law in this Circuit is that a "[f]ailure to follow a district court's local rules is a proper grounds for dismissal."[130] Although dismissal for a local rules violation is a "harsh penalty and is to be imposed only in extreme circumstances," the Court may carefully exercise its discretion to do so based on an analysis of five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[131]

Here, only the fifth factor weighs indisputably against dismissal. A less drastic sanction is available, which essentially is to impose no sanction at all given the

---

[128] Docket 32 at 13–15 (citations omitted).
[129] *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014) (citations omitted).
[130] *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (citing *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979)); *see also Warren*, 601 F.2d at 474 (affirming district court's summary dismissal of an indictment due to a violation of a local rule); *Henderson v. Duncan*, 779 F.2d 1421, 1423, 1425 (9th Cir. 1986) (construing, and affirming, district court's dismissal of a suit for violation of a local rule as a dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b)).
[131] *Henderson*, 779 F.2d at 1423.

general presumption that a court shall allow a party to amend a deficient pleading when it would not be futile to do so.[132]  The Court could grant MidCap leave to amend its counterclaims to correct its violation of the local and federal rules and allege the necessary facts to support an amount in controversy exceeding $75,000.  If necessary, the Court also could allow limited discovery on the amount in controversy.  Even so, if the Court were to insert itself into this dispute by allowing discovery or holding a hearing, this solution would drain both the Court's and parties' resources on a non-dispositive jurisdictional issue in a case where all of the plaintiff's claims have been dismissed and only state-law claims remain.  Alternatively, the Court could make a determination of whether it can exercise supplemental jurisdiction over MidCap's claims, but the Court would be inclined to decline to exercise supplemental jurisdiction because it has "dismissed all claims over which it has original jurisdiction," namely EGAE's claims against HUD.[133]  Thus, while this factor and the general presumption that a court shall freely grant leave to amend favor leniency, allowing MidCap to further amend its counterclaims would result in a greater burden to the parties and the Court, a consideration more directly relevant to the other factors discussed below.

The first, third, and fourth factors on their face support leniency but, when considering the relatively unique circumstances present here, are more or less neutral.  Dismissal of MidCap's counterclaims for a pleading deficiency is far from a decision on

---

[132] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing Fed. R. Civ. P. 15(a)).

[133] 28 U.S.C. § 1367(c)(3).

the merits. However, MidCap still has the opportunity to obtain a decision on the merits by bringing its state-law claims in the most appropriate forum: Alaska state court. Indeed, MidCap is already defending a suit brought by EGAE seeking to enjoin foreclosure in Alaska Superior Court,[134] which provides a natural, efficient forum through which it can seek relief on the state-law claims it brings here. MidCap could pursue a decision on the merits there, and it would not even need to file a new lawsuit to do so. In fact, Alaska state courts routinely hear property related disputes sounding entirely in state law, as MidCap's counterclaims do, so that court system may be able to more efficiently resolve the dispute than a federal court would.[135] Further, the case before this Court has not proceeded past the pleading stage, so it is not as if the parties have expended significant resources on discovery or the case's merits. Similarly, the deadline for MidCap to file its response to EGAE's complaint in the case before the Alaska Superior Court has been extended to October 6, 2023, so MidCap has every opportunity to bring its counterclaims there.[136] Thus, a dismissal from this Court and MidCap's pursuing its claims in the existing state court case likely will lead to a more expeditious conclusion to the litigation and still allow MidCap to receive a decision on the merits. As for any potential prejudice to MidCap, there would be little to no prejudice since it already is engaged in a more appropriate forum

---

[134] *EGAE, LLC vs. Trustee Services of Aalska, Inc., et al.*, No. 3AN-23-0682\9CI, CourtView, https://records.courts.alaska.gov/eaccess/searchresults.page?x=jn0mEFIuPVaQXHBbXIj0LO5SqSatDirPi4VyMktElIvTb9WVLBqnf3qNMfRLoyf-qlffoQu2yIqLO3YYa8TNQw# (last accessed Aug. 28, 2023); Compl. for Injunctive Relief, *EGAE, LLC v. Tr. Servs. Of Alaska Inc.*, Case No. 3AN-23-06829 CI (Alaska Super. Ct. June 19, 2023).

[135] *E.g.*, *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1116 (Alaska 2011).

[136] *EGAE, LLC v. Tr. Servs. of Alaska Inc.*, Case No. 3AN-23-06829 CI (Alaska Super. Ct. June 19, 2023) (stipulation and order).

in which it still can bring its counterclaims, be heard on the merits, and, if it chooses to do so, enjoy greater efficiencies by also seeking foreclosure or other remedies available to it in state court.

Finally, the second factor weighs heavily in favor of dismissal. A federal court is not as equipped to handle state law property disputes as is a state court that routinely considers those issues and interprets state law. Nor does it make sense from a practical standpoint for this Court to continue to hear MidCap's counterclaims with HUD's now being removed from the lawsuit and the only parties left being the MidCap Entities and EGAE, particularly when those two parties already are engaged in active litigation in state court. The Court must remain mindful of its docket so that the cases most appropriate for resolution in federal court—those involving federal claims or diverse parties where the amount in controversy is not fairly in dispute—can proceed efficiently. It is not a prudent use of resources for this Court to allow state law counterclaims to proceed as well as to potentially resolve a jurisdictional dispute that may require discovery or further hearings while all of the federal claims brought by the original plaintiff have been dismissed and a more efficient venue is available.

In light of the above, and notwithstanding the unforgiving nature of the Court's decision, the Court finds it appropriate to dismiss MidCap's counterclaims for its failure to follow Local Civil Rule 8.1(b) after already having had multiple opportunities to comply with that rule and Federal Rule 8(a). Although the Court's dismissal is with prejudice and without leave to amend in federal court, MidCap may of course bring its claims against EGAE in the existing state court action.

**C.     MidCap's Pending Motions**

Having found that dismissal of MidCap's counterclaims is the appropriate sanction for MidCap's failure to follow this Court's local rules, both of MidCap's pending motions are moot and must be denied.

## IV.     CONCLUSION

As discussed herein, EGAE's *Motion to Dismiss Counterclaims Filed by MidCap Funding Investment X, LLC* at Docket 26 is **GRANTED**; HUD's *Motion to Dismiss* at Docket 35 is **GRANTED**; MidCap's *Motion to Appoint a Receiver* at Docket 19 is **DENIED AS MOOT**; and MidCap's *Motion to Enforce Right to Inspect Collateral* at Docket 41 is **DENIED AS MOOT**.  EGAE's claims against HUD are **DISMISSED WITH PREJUDICE**.  MidCap's counterclaims against EGAE are **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall issue a final judgment.

IT IS SO ORDERED this 13th day of September, 2023, at Anchorage, Alaska.

_____
        */s/ Joshua M. Kindred*
        JOSHUA M. KINDRED
        United States District Judge